**UNITED STATES of America,
Appellee,**

v.

**Albert Philip SPEAKS, Defendant-
Appellant.**

**No. 71-1292.**

United States Court of Appeals,
First Circuit.

Heard Dec. 6, 1971.

Decided Jan. 11, 1972.

Certiorari Denied April 17, 1972.
See 92 S.Ct. 1522.

Joseph P. Nadeau, Dover, N. H., by appointment of the Court, for appellant.

Carroll F. Jones, Asst. U. S. Atty., with whom David A. Brock, U. S. Atty., was on brief, for appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

McENTEE, Circuit Judge.

This is an appeal from a conviction for passing and uttering a counterfeit United States $20 bill with intent to defraud the United States in violation of 18 U.S.C. § 472. On the afternoon of August 26, 1970, the appellant Speaks purchased a carton of cigarettes at the W. T. Grant store in Salem, New Hampshire, with a counterfeit $20 bill. The employee to whom Speaks gave the bill immediately became suspicious, and showed the bill to her supervisor, who saw Speaks and the codefendant Butler leave the parking lot in a late model brown Cadillac. They proceeded to the Food Fair store which was about a hundred yards to the north, where Butler purchased a carton of cigarettes and some lemonade using a counterfeit United States $20 bill. The cashier, suspicious of the bill, called her supervisor, who told Butler it was a counterfeit and that she would have to report it.[1] Butler then gave the supervisor the counterfeit bill, paid for his purchase with a genuine $5 bill and left. Both stores immediately telephoned the Salem police.

Speaks and Butler left the Food Fair parking lot and proceeded north on Route 28. While making a left turn to a road leading out of town, they were arrested by the Salem police and were brought to the Salem Police Station in separate cars. During the ride to the station Butler was observed stuffing something between the seat cushions of the police cruiser. A subsequent examination of the cruiser revealed twenty-eight counterfeit $20 bills.

Neither suspect made a statement to the Salem police. About two hours after their arrest, Secret Service Agent Lee, accompanied by another agent, interviewed both Speaks and Butler in the cell block area of the police station. Lee testified that before questioning them he warned both of them of their rights, was fully satisfied that they understood these rights and that both were more than willing to speak to him regarding the events of the day.[2] Thereafter, both

1. The supervisor testified that the man appeared nervous, said his name was William Johnson and that he probably had received the bill in his pay from Rockingham Park.

2. Lee testified at the voir dire, "Mr. Speaks advised me that he fully understood his rights and did in fact wish to discuss the events of that day with me. . . . Mr. Butler repeated the same statement

men were separately indicted and after a joint trial the jury found each of them guilty as charged.[3] The case is before us on Speaks' appeal. Defendant Butler did not appeal.

At trial Speaks did not dispute that he passed a counterfeit $20 bill at the W. T. Grant store in Salem on August 26, 1970, in payment for a carton of cigarettes. His principal defense was that at the time he passed the bill in question, he did not know that it was a counterfeit.[4] However, Agent Lee testified that during his initial interview the appellant admitted that he had in fact passed the bill, and when asked where he obtained it, replied, "I cannot name the man. I would be killed."

Appellant's first contention is that this admission was not corroborated by other evidence as required by Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1962). The required quantum of corroborative evidence was discussed in Smith v. United States, 348 U.S. 147, 156, 75 S.Ct. 194, 199, 99 L.Ed. 192 (1954) where the Court stated,

"It is agreed that the corroborative evidence does not have to prove the offense beyond a reasonable doubt, or even by a preponderance, as long as there is substantial independent evidence that the offense has been committed, and the evidence as a whole proves beyond a reasonable doubt that the defendant is guilty. . . . All elements of the offense must be established by independent evidence or corroborated admissions, but one available mode of corroboration is for the independent evidence to bolster the confession itself and thereby prove the offense 'through' the statements of the accused."

See also Opper v. United States, 348 U. S. 84, 75 S.Ct. 158, 99 L.Ed. 101 (1954).

■ Here there was ample independent corroborative evidence of appellant's knowledge that the $20 bill was counterfeit. To begin with, the bill spoke for itself. It was a very poor job of counterfeiting and was recognized immediately as a bogus bill. Furthermore, appellant's alleged story that he found the bills in a parking lot and wanted to spend them to test their genuineness was bizarre and incredible.[5] In addition, he was in the company of a man who, as shown by his attempt to hide the bills, obviously knew they were counterfeit. And finally, after Butler was rebuffed in an attempt to pass one of the bills he and the appellant headed out of town. This evidence sufficiently corroborates appellant's admission regarding knowledge.

■■ Also, on appeal, Speaks alleges that because he refused to sign a waiver of his rights to remain silent and to be assisted by counsel, he therefore cannot be deemed to have intelligently waived these rights when he made certain admissions to Agent Lee. Before any questioning, Agent Lee read to the appellant the standard form used by the Secret Service to advise suspects of their constitutional rights.[6] Lee also

that Mr. Speaks said, that he wanted to speak to me regarding the events of the day."

3. Speaks was charged in a one count indictment arising out of the purchase at the W. T. Grant store. Butler was indicted on two counts. The first arose out of the purchase at the Food Fair store and the second count charged possession of the twenty-eight counterfeit $20 bills.

4. Appellant testified that when he and Butler drove into the parking lot at Rockingham Race Track, Butler found the

$20 bills lying on the ground between the cars; that they then decided not to go to the track but to return home to Providence and that Butler gave him one of the $20 bills to buy a carton of cigarettes at the W. T. Grant store.

5. Agent Lee testified that appellant told him this story on August 27.

6.      "WARNING AND CONSENT TO SPEAK

"You must understand your rights before we ask you any questions.

"You have the right to remain silent.

read that portion of the form which stated that these rights could be waived, and gave this to the appellant to read. Lee told him that there was a place for his signature on the waiver form, but that the signature was not necessary. Appellant refused to sign the form, but stated that he fully understood his rights and wanted to speak with Lee.[7] The agent spent about ten or fifteen minutes with the appellant to ensure that he fully understood his rights before proceeding with questioning. In the circumstances of this case, the refusal to sign the form did not indicate a desire to remain silent, *cf.* United States v. Nielsen, 392 F.2d 849 (7th Cir. 1968). Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) requires only that the waiver of rights be made voluntarily, knowingly, and intelligently, and not that it be made in writing. Klingler v. United States, 409 F.2d 299, 308 (8th Cir.), cert. denied, 396 U. S. 859, 90 S.Ct. 127, 24 L.Ed.2d 110 (1969). We are convinced that the appellant's waiver met the *Miranda* requirements.

■ Appellant's next contention is that it was reversible error for the court not to give a requested instruction relating to the requirement of knowledge.[8] The requested charge was not a clear statement of the law, for the fact of suspicion could create an inference of knowledge. More importantly, the court delivered a full and clear charge on the necessity of proof of knowledge and intent beyond a reasonable doubt.[9]

■ Finally, appellant argues that the evidence was insufficient to convict him and therefore his motion for new trial should have been granted. His argument is premised upon a holding that the evidence was not sufficiently corroborative or that his statements to Agent Lee were inadmissible, and thus is no more than a rehash of the issues decided above. The evidence against the appellant was more than ample to support his conviction, and therefore denial of his motion was not error.

Affirmed.

"Anything you say can be used against you in court, or other proceedings.

"You have the right to talk to a lawyer for advice before we question you and to have him with you during questioning.

"If you cannot afford a lawyer and want one, a lawyer will be appointed for you. If you decide to answer questions now without a lawyer present, you will still have the right to stop the questioning at any time. You also have the right to stop the questioning at any time until you talk to a lawyer."

7. See footnote 2 *supra.*

8. The requested instruction read as follows: "No. 9. The fact that an individual is suspicious of the genuineness of a bill is not in and of itself sufficient to establish beyond a reasonable doubt, knowledge that the bill is actually counterfeit or intent to defraud the United States Government by its use."

9. "Both defendants claim that the money was found. Both claim that they did not know it was counterfeit at the time they went into the two stores to purchase items and that they did not intend to defraud anybody.

"So, first of all, I want to define for you the phrase 'intent to defraud,' because that is the key phrase in both cases. And that is defined as to act willfully and with specific intent to deceive or cheat for the purpose of financial gain. The evidence, however, does not need to establish that the United States or anyone was actually defrauded. The heart of the issue is that the accused acted with intent to defraud, as I have just defined it. But, of course, if you find that either or both of the defendants did not know that the $20.00 bills were counterfeit prior to, and I want to emphasize that, prior to the time they tried to use them for purchases, then there can be no intent to defraud. Knowledge and intent go together in both of these cases.

"The government has to prove beyond a reasonable doubt that, at the time he passed it, Mr. Speaks knew the $20.00 Federal Reserve Note was counterfeit."