**UNITED STATES of America, Appellee,**

v.

**Michael JOHNSON, Appellant.**

**Nos. 75–1529, 75–1890.**

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 10, 1975.

Decided Feb. 5, 1976.

Rehearing Denied in No. 75–1529 Feb. 24, 1976.

Certiorari Denied June 1, 1976. See 96 S.Ct. 2233.

Lawrence J. Permuter, Clayton, Mo., for appellant.

Richard A. Heidenry, Asst. U. S. Atty., St. Louis, Mo., for appellee.

Before LAY, BRIGHT and HENLEY, Circuit Judges.

LAY, Circuit Judge.

Defendant was convicted on two counts of possession of stolen United States Treasury checks in violation of 18 U.S.C. § 1708 and two counts of uttering forged checks in violation of 18 U.S.C. § 495. On appeal he asserts that the trial court erred in admitting into evidence his two written statements and in failing to give certain requested instructions. We affirm.

The first of the statements were given on July 16, 1974, when a Postal Inspector and a Secret Service Agent interviewed Johnson at his home concerning the theft and cashing of a government check in the amount of $128.05 payable to Al-

mamie Long of St. Louis, Missouri.[1] After *Miranda* warnings were given, Johnson related that he had received the check from one Pete Mallory and that Mallory had indorsed it claiming that Ms. Long was his ex-wife. Johnson also told the agents that Mallory worked at the Chevrolet plant on Natural Bridge Avenue and gave them Mallory's home address. His statement was taken down in longhand by the Secret Service Agent, and was read and signed by Johnson at the conclusion of the interview. Subsequent investigation revealed that no one by the name of Pete Mallory lived at the address Johnson had given or had ever worked at the Chevrolet plant in question.

On July 19, 1974, the government filed a complaint concerning the Long check and a warrant was issued for Johnson's arrest for possession of stolen mail. Johnson was arrested pursuant to the warrant on November 8, 1974.

On November 11, 1974, Johnson was again interviewed by two Secret Service Agents. At this time Johnson made a second statement claiming that the Long check had been given to him by a girlfriend of Pete Mallory named "Liz" who had signed Almamie Long's name in his presence.

After a hearing the trial court denied defendant's motion to suppress both statements.

■ The defendant urges that the trial court erred in failing to make specific findings on the record with regard to the *Miranda* warnings and the voluntariness of the waiver. In *Evans v. United States*, 375 F.2d 355 (8th Cir. 1967), this court said:

[T]he district court was required to make a finding on the record with "unmistakable clarity" that (1) the *Miranda* warnings were given; (2) the defendant knowingly and intelligently waived his privilege against self-incrimination . . .; (3) the defend-

ant voluntarily, knowingly and intelligently waived his right to have retained or appointed counsel present at the interrogation; (4) the confession or statement was freely and voluntarily made.

*Id.* at 360.

We agree with the defendant that the trial court was required to make the *Evans* findings on the record, but the failure to do so does not require suppression now. This court remanded the cause to the district court, and ordered the trial judge to make the *Evans* findings on the record *nunc pro tunc*. The district court reviewed the transcript of the hearing on the motions to suppress, and found that the defendant had received *Miranda* warnings prior to each statement, that he had knowingly and intelligently waived his privilege against self-incrimination and to presence of counsel, and that the statements were freely and voluntarily made. The motion to strike these findings is without merit.

With regard to the November 11 statement, Johnson asserts that the government violated his right to remain silent by interrogating him in the absence of his appointed lawyer and in the absence of a written waiver of presence of counsel.

The record reveals that, after the full *Miranda* rights were read to the defendant, he voluntarily signed the form acknowledging that "I have read this statement of my rights and it has been read to me, and I understand what my rights are." However, the defendant claims and the record demonstrates that he then refused to execute the waiver on the form which reads:

WAIVER

I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure or force of any kind have been used against me. I hereby voluntarily and inten-

---

1. A superseding indictment also charged Johnson with possession and uttering of a Veterans Administration compensation check in the amount of $495.00 payable to one Jewel McNeal of St. Louis.

tionally waive my rights and I am willing to make a statement and answer questions.

 Despite Johnson's refusal to sign the written waiver, the defendant thereafter answered the agents' questions. It is true that the government bears the burden of establishing that the interrogation took place after the defendant had knowingly and intelligently waived his right to remain silent. It would be the better practice, in cases such as this where the defendant assumes the seemingly contradictory position of refusing to sign a waiver but agreeing to answer questions, for the agents to

> inquire[ ] further of him before continuing the questioning to determine whether his apparent change of position was the product of intelligence and understanding or of ignorance and confusion. *United States v. Nielsen*, 392 F.2d 849, 853 (7th Cir. 1968).

However, we do not think that the failure to make further inquiry here warrants reversal. The defendant did not offer any testimony at the suppression hearing to rebut the government's version of the circumstances surrounding the statement, and the defendant has never contended that the agents in any improper way induced him to talk after the warnings were given. Further, the defendant did sign a form indicating that he had received and understood those warnings:

> You have the right to talk to a lawyer for advice before we question you and to have him with you during questioning.
>
> If you cannot afford a lawyer and want one, a lawyer will be appointed for you by the court. If you decide to answer questions now without a lawyer present, you will still have the right to stop the questioning at any time. You also have the right to stop the questioning at any time until you talk to a lawyer.

A voluntary waiver need not assume any particular form; it may be either oral or in writing. *See Moore v. Wolff*, 495 F.2d 35, 37 (8th Cir. 1974); *see also Michigan v. Mosley*, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (Dec. 9, 1975). Under the circumstances, we cannot say that the district court's determination that the waiver was valid and the statement was voluntary is clearly erroneous.

 The second ground on which defendant seeks to suppress the statement is that it was taken without notice to counsel after counsel had been appointed. The record shows that counsel was appointed by the magistrate at Johnson's arraignment on November 8. However, the lawyer was not informed of his appointment until November 12. This fact is not in itself significant. However, it tends to corroborate the agent's testimony that he was unaware on November 11 that counsel had been appointed on November 8. Under the circumstances the ethical problem alluded to in *Moore v. Wolff, supra* is not present here.

 The defendant's objection to the statement of July 17, 1974, in which Johnson stated he received the Long check from Pete Mallory, is that the written statement is hearsay and that its admission is a denial of the right of confrontation since the agent who wrote it down did not testify. The objections must fail. A statement which is reduced to writing by one other than the accused is generally admissible where the accused reads it over and signs it. *See United States v. Evans*, 320 F.2d 482, 484 (6th Cir. 1963); *United States v. Del Porte*, 357 F.Supp. 969, 976 (S.D.N.Y.), *aff'd* 483 F.2d 1399 (2nd Cir. 1973). Moreover, under the *Federal Rules of Evidence*, which became effective on the date of Johnson's trial, the statement is not hearsay. Fed.R.E. 801(d)(2)(A), (B).

 Johnson's statement was written down by Agent Gilmore who was not called by the government. Foundation for its admission was provided by Agent Wellner who witnessed Gilmore's interrogation of Johnson. Johnson was not denied a fair opportunity to cross-examine Wellner concerning the accuracy of the

writing as a reflection of the defendant's oral statement and did not attempt to subpoena Agent Gilmore. This is not a violation of the confrontation clause.

■ Johnson finally urges that the court erred in failing to give certain requested instructions. Johnson requested that the jury be instructed that if it found that Ernest Hughes or Issac Minor, the persons who cashed the two checks for the defendant, knew that the checks were forged, it must acquit him on the two charges of uttering and publishing the checks as true. He argues that such knowledge would negate the charge set forth in the indictment.

There is no evidence in the record that Hughes or Minor knew that the checks were forged when they cashed them for Johnson. This court has held that an instruction should not be given if it lacks evidentiary support or is based upon mere speculation. *United States v. Waskow*, 519 F.2d 1345, 1347 (8th Cir. 1975). The court properly refused to give the proffered instructions.

The court's instructions to the jury were in accordance with the guidelines set forth in *United States v. Rader*, 185 F.Supp. 224 (W.D.Ark.1960), *aff'd* 288 F.2d 452 (8th Cir.), *cert. denied*, 368 U.S. 851, 82 S.Ct. 86, 7 L.Ed.2d 49 (1961). Therefore, this contention is without merit.

The defendant has filed a separate appeal, No. 75–1890, asserting error in the forfeiture of his bond, pending appeal. By our affirmance of his conviction this appeal is now rendered moot and ordered dismissed.

The judgment of the district court is affirmed.