**UNITED STATES of America, Appellee,**

v.

**Antonio Valentino ZAMARRIPA, Appellant.**

**No. 76–1377.**

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 11, 1976.

Decided Nov. 19, 1976.

Rehearing and Rehearing En Banc Denied Dec. 28, 1976.

H. Carl Kuelker, St. Louis, Mo., for appellant.

Barry A. Short, U. S. Atty. and David M. Rosen, Asst. U. S. Atty., St. Louis, Mo., for appellee.

Before LAY, ROSS and HENLEY, Circuit Judges.

HENLEY, Circuit Judge.

Defendant was convicted by a jury on two counts of unlawful and fraudulent interstate transportation of stolen money orders in violation of 18 U.S.C. § 2314. For reversal he contends that the district court [1] erred in 1) denying a motion to suppress two oral incriminating statements made to different law enforcement officers, and 2) admitting testimony as to a telephone conversation a witness allegedly conducted with defendant's brother. We affirm the action of the district court.

The evidence adduced at trial indicates that during the evening of December 1 or early morning hours of December 2, 1975, Barbara Darnell, an on-duty employee of the Majik Market store from which the money orders were stolen, received a telephone call from a man who identified himself as Florentino ("Tino") Zamarripa, her former manager at the store and the brother of the defendant. The caller told her that he needed money to get his brother out of town. When she informed him that none was available, he stated that he would come down to the store anyway. Ms. Darnell then removed blank money orders from the safe and attempted to hide them underneath the counter. Soon thereafter Tino, his brother Tony, the defendant, and a friend, Belinda Zook, arrived at the Majik Market. Upon learning that the money orders were no longer in the safe, Tino conducted an extensive search of the premises. He finally located the sought after money orders and proceeded to fill them in on a machine while the party was still in the store.

Within hours the defendant negotiated two of the money orders, and was arrested later in the day of December 2 by Patrol-

---

1. The Honorable John F. Nangle, United States District Judge for the Eastern District of Missouri.

man Robert Cutt, a municipal officer of the City of Hazelwood, Missouri. Officer Cutt testified that *Miranda* warnings were given, that the defendant indicated he understood his rights, and that the defendant initially related to him that he had purchased the money orders in Wisconsin, but then stated that he had bought them in St. Louis.

While in prison the defendant was further questioned on December 22 by FBI Special Agent Donald Taylor who testified that he presented the defendant with an Advice of Rights and Waiver form to be read and signed by the defendant himself, that the defendant read it, acknowledged his understanding of it, and agreed to speak with Agent Taylor, but refused to sign the waiver form. During this interview, the defendant admitted signing and passing the money orders, though he maintained that he purchased them legitimately at the Majik Market.

## I

■ Defendant asserts on appeal that the district court erred in admitting into evidence the incriminating statements he made to Officer Cutt and Agent Taylor, urging that an intelligent and voluntary waiver of his rights prior to making the statements was not adequately established. We disagree with the defendant.

Pursuant to the test for voluntariness promulgated by the Supreme Court in *Jack-*

*son v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), and applied by this court in *Evans v. United States,* 375 F.2d 355 (8th Cir. 1967), the district court made a finding on the record with "unmistakable clarity" that (a) the *Miranda* warnings were given; (b) the defendant knowingly and intelligently waived his privilege against self-incrimination with regard to them; (c) the defendant voluntarily, knowingly and intelligently waived his right to have retained or appointed counsel present at the interrogation, and (d) the statements or confessions were freely and voluntarily made.

■ The evidence supports the adequacy of this finding. The defendant acknowledged to both law enforcement officers that he understood each portion of the *Miranda* warnings, and made an affirmative statement to Officer. Cutt that he knew his rights and what they were all about. After reading the Advice of Rights and Waiver form given him by Agent Taylor,[2] the defendant informed the agent that he was willing to answer questions but would decline to sign the waiver form. Agent Taylor then inquired further into the defendant's reasoning which was the appropriate procedure where the defendant assumed an apparently contradictory position as he did here. *United States v. Johnson,* 529 F.2d 581, 584 (8th Cir. 1975), *cert. denied,* 426 U.S. 909, 96 S.Ct. 2233, 48 L.Ed.2d 835 (1976). The defendant responded that he

---

**2.** Agent Taylor furnished the defendant with a standard Bureau form which tracks the language of the *Miranda* decision:

INTERROGATION: ADVICE OF RIGHTS
*YOUR RIGHTS*
Before we ask you any questions, you must understand your rights.

You have the right to remain silent.

Anything you say can be used against you in court.

You have the right to talk to a lawyer for advice before we ask you any questions and to have him with you during questioning.

If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish.

If you decide to answer questions now without a lawyer present, you will still have

the right to stop answering at any time until you talk to a lawyer.

*WAIVER OF RIGHTS*

I have read this statement of my rights and I understand what my rights are. I am willing to make a statement and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me.

While it would have been preferable had Agent Taylor read the form to the defendant instead of requiring the defendant to read it himself, the latter procedure does not vitiate the warning *eo ipso. United States v. Choice,* 392 F.Supp. 460 (E.D.Pa.1975).

just did not want to sign the waiver form, and proceeded to answer the questions asked of him.

■ The fact that the defendant did not sign the waiver form does not, per se, defeat the validity of a waiver of constitutional rights; the holding in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), requires that a waiver of rights be made voluntarily, knowingly and intelligently, but does not demand that it be made in writing. *United States v. Speaks*, 453 F.2d 966, 969 (1st Cir. 1971), *cert. denied*, 405 U.S. 1071, 92 S.Ct. 1522, 31 L.Ed.2d 804 (1972); *Klingler v. United States*, 409 F.2d 299, 308 (8th Cir.), *cert. denied*, 396 U.S. 859, 90 S.Ct. 127, 24 L.Ed.2d 110 (1969); *United States v. Choice*, 392 F.Supp. 460, 466 (E.D.Pa.1975).

■ A voluntary waiver need not assume any particular form; it may be made in writing on a printed format or it may be made orally by replying to questions as in this case. *United States v. Johnson, supra* at 584; *see Moore v. Wolff*, 495 F.2d 35, 37 (8th Cir. 1974). A valid waiver of rights does not require an express declaration to that effect, *Hughes v. Swenson*, 452 F.2d 866, 867–68 (8th Cir. 1971); nor does lack of such a declaration necessarily indicate a defendant's desire to remain silent, *United States v. Speaks, supra* at 969. The validity of a waiver is to be determined from all of the surrounding circumstances. *United States v. Marchildon*, 519 F.2d 337, 343 (8th Cir. 1975).

■ When the circumstances indicate that a defendant knew of his right to remain silent and to have counsel, yet intelligently waived that right by voluntarily answering questions, his refusal to sign a written waiver does not render a confession or an incriminating statement inadmissible. *United States v. Johnson, supra; United States v. Biondo*, 483 F.2d 635 (8th Cir. 1973), *cert. denied*, 415 U.S. 947, 94 S.Ct. 1468, 39 L.Ed.2d 563 (1974).

There is convincing evidence that the defendant knew and understood his rights, and voluntarily answered questions. In-

deed, the defendant offered no testimony to rebut that of Officer Cutt and Agent Taylor concerning the circumstances leading to his incriminating statements, and he does not contend that either of them improperly induced him to speak after the warnings were given.

We conclude that the evidence is sufficient to sustain the finding of the district court that the defendant made an intelligent and voluntary waiver of his rights, and that the denial of the motion to suppress defendant's later statements was not clearly erroneous.

II

The defendant next protests the admission into evidence of testimony of Barbara Darnell concerning a telephone conversation she had with a person who identified himself as the defendant's brother Tino. The defendant claims that the testimony constituted hearsay evidence, and that his objection to its admission was erroneously overruled.

The district court initially admitted the testimony on the condition that the government introduce evidence that the caller was actually the defendant rather than his brother Tino. Ms. Darnell testified that the caller, who phoned after midnight on December 2, said, "This is Tino. I need some money because I got to get my brother out of town," and thereupon announced that he was coming down to the store. The government produced Belinda Zook who was in the company of both the defendant and his brother that night. She testified that in a phone call the defendant had made in mid-evening on December 1 she had overheard the word "Barb" and "money," and that the defendant's former wife was named Barb.

■ It is questionable whether through Ms. Zook's testimony the government provided evidence sufficient to prove that the defendant had actually called Ms. Darnell, and thus sufficient to meet the condition set forth by the district court regarding the admission of the telephone conversation. But even if it were in fact Tino and not the

defendant who called Ms. Darnell, the conversation was allowable as evidence indicating a concert of action between the defendant and Tino. It is settled that once concert of action between a declarant and the defendant is independently established, hearsay statements made in furtherance of the relationship are admissible under Rule 801(d)(2)(E), Fed.R.Evid. *United States v. Buckhanon*, 505 F.2d 1079, 1084 (8th Cir. 1974); *United States v. Richardson*, 477 F.2d 1280, 1282–83 (8th Cir.), *cert. denied*, 414 U.S. 843, 94 S.Ct. 104, 38 L.Ed.2d 82 (1973); *United States v. Sanders*, 463 F.2d 1086, 1088 (8th Cir. 1972); *United States v. Schroeder*, 433 F.2d 846, 849 (8th Cir. 1970), *cert. denied*, 401 U.S. 943, 91 S.Ct. 951, 28 L.Ed.2d 224 (1971).

The admissibility of such evidence requires only a showing of the likelihood of illicit association between the declarant and the defendant. *United States v. Sanders, supra; United States v. Ragland*, 375 F.2d 471 (2d Cir. 1967). In this case, the testimony of Ms. Zook, corroborated by that of Ms. Darnell, that Ms. Zook and both men went to the store, and that Tino in the defendant's presence found the blank money orders and filled them out was sufficient independent evidence of concert of action on the part of the two brothers to make the telephone conversation of Tino with Ms. Darnell admissible against the defendant.

Similarly, the conversation may be considered to have been properly admitted into evidence to explain the actions of Ms. Darnell in removing the money orders from the safe, and attempting to hide them. Because this was an unusual response to a telephone call, it was worthy of clarification by reference to the call. The conversation was thus appropriately admitted to explain Ms. Darnell's behavior, rather than as hearsay to prove the truth of the statements made by the man identifying himself as Tino. Fed.R.Evid. 801(c).

We find no error on the part of the district court in admitting the telephone conversation.

The judgment of conviction is affirmed.