**UNITED STATES of America, Appellee,**

v.

**Richard Eugene MEARS, Appellant.**

**No. 79–1671.**

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 5, 1979.

Decided Feb. 8, 1980.

Rehearing and Rehearing En Banc Denied March 5, 1980.

---

Philip M. Moomaw, Asst. Federal Public Defender, Springfield, Mo., argued and made rebuttal and Thomas M. Bradshaw, Acting Federal Public Defender, Kansas City, Mo., on brief, for appellant.

Michael A. Jones, Asst. U. S. Atty., Springfield, Mo., argued, Ronald S. Reed, Jr., U. S. Atty., Kansas City, Mo., on brief, for appellee.

Before HEANEY, BRIGHT and ROSS, Circuit Judges.

ROSS, Circuit Judge.

Richard Eugene Mears appeals from his conviction under the Dyer Act, 18 U.S.C. § 2312, for the interstate transportation of stolen motor vehicles.

On appeal, Mears contends that the district court[1] erred: (1) in admitting an in-court identification of Mears which he claims was tainted by an impermissibly suggestive photospread; (2) in refusing to suppress allegedly unlawfully obtained statements and admissions made by him; and (3) in permitting the jury to correct its verdict. While we are not without reservations regarding two of these alleged errors, we believe these errors to be harmless beyond a reasonable doubt in view of the overwhelming evidence against Mears in this case and accordingly, affirm.

---

1. The Honorable Russell G. Clark, United States District Judge for the Western District of Missouri.

Mears was indicted by a federal grand jury in the Western District of Missouri on November 30, 1978. A jury found Mears guilty on June 26, 1979, on both counts of the indictment. He was sentenced to three years imprisonment on each count, to be served consecutively with each other and with a five year sentence Mears was then serving for a Dyer Act violation from the Western District of North Carolina.

Mears made several motions to suppress the admissions and statements which he now claims were improperly admitted into evidence. These claims were considered at a pretrial hearing and denied by the district court.

The evidence established that Mears, posing as "Miles B. Patton," purchased two Lincoln Continental cars from dealer Glen Romines of Houston, Missouri, with worthless checks. One car was driven to Oklahoma where it was sold to Dayne Henry, a used car dealer who was an old acquaintance of Mears. The second car was sold to a Louisiana car dealer who stopped payment on his check after learning that the car was stolen. One month after these sales transactions, FBI agents showed Romines a photo display which included two sets of photographs of Mears, one with and one without glasses. Romines immediately identified Mears from one of these photos.

Mears claims that the district court erred in permitting his in-court identification by witness Glen Romines. He contends that the photo display was unduly suggestive because Mears was the only person with two photographs among the seven shown Romines. We have consistently recognized that:

[C]onvictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.

*United States v. Smith*, 602 F.2d 834, 837 (8th Cir. 1979), *quoting Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 971,

19 L.Ed.2d 1247 (1968). However, a display is not impermissibly suggestive where the agent does not direct the witness' attention to any particular photo, and the display does not contain several photos or peculiar photos of the defendant alone. *See, e. g., United States v. Hancock*, 558 F.2d 1300, 1302 (8th Cir.), *cert. denied*, 434 U.S. 872, 98 S.Ct. 219, 54 L.Ed.2d 152 (1977).

Mears' contention that the government did not meet its burden of proving that Romines' in-court identification was not induced or influenced by the photographs, *United States v. Valez*, 467 F.2d 600, 602 (8th Cir. 1972), is without merit. An in-court identification will not be held to be tainted by an invalid display if a sufficient basis for courtroom identification independent of any improper photo display exists. *United States v. Monteer*, 512 F.2d 1047, 1050 (8th Cir.), *cert. denied*, 423 U.S. 855, 96 S.Ct. 103, 46 L.Ed.2d 80 (1975). Indeed, unnecessarily suggestive pretrial confrontation procedures, standing alone, do not violate due process; "reliability is the linchpin in determining the admissibility of identification testimony * * *." *Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977). *See also United States v. Alden*, 576 F.2d 772, 778 (8th Cir.), *cert. denied*, 439 U.S. 855, 99 S.Ct. 167, 58 L.Ed.2d 161 (1978).

Although the photo display improperly included two photographs of Mears, it is unlikely that Romines' in-court identification was thereby tainted. His in-court identification of Mears stemmed from his recollection of the appearance of the defendant based on their dealings for the sale of two cars. Romines had ample opportunity to observe Mears during the course of two automobile sales transactions. The two men met on at least two occasions to discuss the purchase and delivery of the vehicles. We therefore consider the in-court identification by Romines, based on his independent recollection of the defendant, reliable. *See, e. g., Starkey v. Wyrick*, 555 F.2d 1352, 1354 (8th Cir.), *cert. denied*, 434 U.S. 848, 98 S.Ct. 156, 54 L.Ed.2d 116 (1977).

Moreover, Romines' identification of Mears was corroborated by the testimony of several other witnesses who did not view the photographic display, but identified Mears at trial as the purchaser of the cars from Romines. *See Neil v. Biggers,* 409 U.S. 188, 199–201, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972); *Starkey v. Wyrick, supra,* 555 F.2d at 1354–55.

Mears objects to the admission of various statements on the grounds that: (1) he was incapable of knowingly and voluntarily consenting to being questioned by reason of intoxication; (2) the statements were made at a second interrogation after Mears' initial refusal to speak and subsequent to his request for an attorney; and (3) the statements were the product of illegally seized evidence.

*Miranda* warnings were first given Mears at the time of his arrest at a Mobile, Alabama bar. He immediately invoked his right to remain silent and requested legal assistance. Thereafter Mears was taken to his motel room and to his apartment to collect his personal effects. During the course of that afternoon Mears was permitted by the officers to consume beer and he subsequently made several admissions which he now claims should have been suppressed. Mears also claims that he remained intoxicated after three days in jail, urging that any statements then given were not voluntarily and freely made, notwithstanding the fact that he was again informed of his rights at that time. Further, he asserts that he was tricked into making admissions regarding the stolen cars on the basis of allegedly illegally seized dealers' license plates from the Lincoln Continentals.[2]

The district court properly denied Mears' motion to suppress these admissions. Prior to any questioning of Mears at the jail, he was again advised of his constitutional rights and he signed a form indicating that he understood and waived his rights. Mears' jailhouse statements were merely cumulative substantively to his earlier admissions, although somewhat more detailed.

It is inconceivable that he was intoxicated after three days in jail.

Testimony was adduced at trial to establish evidence that Mears was not as intoxicated as he claims, and that he freely decided to make the admissions after being warned of his rights, despite his earlier refusal to speak. The district court apparently credited the agents' testimony that those statements were made voluntarily, solely at Mears' instigation, and that Mears was in a sober condition when he made the admissions at his apartment, as well as those he made at the jail three days later.

As we have noted:

A voluntary waiver need not assume any particular form; it may be made in writing on a printed format or it may be made orally by replying to questions as in this case. *United States v. Johnson, supra* [529 F.2d 581] at 584; *see Moore v. Wolff,* 495 F.2d 35, 37 (8th Cir. 1974). A valid waiver of rights does not require an express declaration to that effect, *Hughes v. Swenson,* 452 F.2d 866, 867–68 (8th Cir. 1971); nor does lack of such a declaration necessarily indicate a defendant's desire to remain silent, *United States v. Speaks, supra* [453 F.2d 966] at 969. The validity of a waiver is to be determined from all of the surrounding circumstances. *United States v. Marchildon,* 519 F.2d 337, 343 (8th Cir. 1975).

*United States v. Zamarripa,* 544 F.2d 978, 981 (8th Cir. 1976), *cert. denied,* 429 U.S. 1111, 97 S.Ct. 1149, 51 L.Ed.2d 566 (1977).

■ We conclude that the evidence is sufficient to sustain the finding of the district court that Mears was adequately and fully advised of his rights and that he knowingly, intelligently and voluntarily waived them before speaking with the agents. Although it is unclear whether Mears' right to counsel was effectively waived, the "totality of the circumstances" indicates that these statements were the product of a "rational intellect and a free will." *See, e. g., United States v. Harden,* 480 F.2d 649, 650 (8th Cir. 1973). Accord-

2. The license plates were not introduced at trial.

ingly, the district court's denial of the motion to suppress Mears' statements was not erroneous. *See United States v. Zamarripa, supra,* 544 F.2d at 981.

█ The wisdom of the officers permitting Mears to consume alcoholic beverages after his arrest is highly questionable. Nonetheless, there is no question that, apart from this error, there was more than ample evidence adduced at trial for the jury to convict. In light of the overwhelming, properly admitted evidence in this case, we hold that even assuming arguendo that the district court erred in admitting this testimony, the errors were harmless beyond a reasonable doubt. *See, e. g., Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967); *United States v. Bell,* 573 F.2d 1040, 1045 (8th Cir. 1978).

██ Finally, Mears contends that the district court erred in permitting the jury to correct its verdict. We disagree. A jury may remedy an announced verdict which is incorrectly signed due to inadvertent error. *Slocum v. United States,* 325 F.2d 465, 467–68 (8th Cir. 1963). Immediately after the verdict was read in open court declaring Mears "not guilty," the jury foreman informed the court that the verdict form was incorrectly signed. The jury then retired for further deliberations, emerging four minutes later with a verdict form finding Mears "guilty." As the government contends the fact that the jury needed only four minutes to complete the second form strongly suggests that the first form was simply incorrectly signed. Moreover, the district judge cured any ambiguity in the verdict by polling each juror in open court and determining that the first verdict was in error and the second verdict correct. *Id.* *See also United States v. Howard,* 507 F.2d 559, 563 (8th Cir. 1974).

The judgment of conviction is affirmed.