**UNITED STATES of America**

v.

**Charles Ray GERARD.**

**Crim. No. B–90–104–CR(3).**

United States District Court,
E.D. Texas,
Beaumont Division.

June 4, 1991.

**480**

Melissa Baldo, Kerry M. Klintworth, Asst. U.S. Atty., Beaumont, Tex., for U.S.

James A. DeLee, Port Arthur, Tex., for Charles Ray Gerard.

## MEMORANDUM OPINION AND ORDER

COBB, District Judge.

Defendant Charles Ray Gerard (Gerard) has filed motions to suppress (1) the identification of him by his alleged victim and (2) his confession. As is fully set forth below, the defendant's motions are each denied.

### I. FACTUAL BACKGROUND

On May 9, 1991 the court heard Gerard's two suppression motions, at which time the following factual scenario emerged. On June 3, 1990 Beaumont Police Officers Paul Colligan and Charlie Porter were patrolling in separate cars when each received a radio call advising that a sexual assault had just occurred. The officers were instructed to look for three suspects near the intersection of Holland and Church streets. The dispatcher described two of the suspects as black males riding bicycles. At the time of the call, the officers were each within five blocks of Holland and Church streets and thus arrived there in less than one minute. Upon arrival, the officers stopped two black males riding bicycles, placed the men in a patrol car and took them to the victim. The victim positively identified the two men, Gerard and co-defendant William Len Stewart (Stewart), as two of her three assailants. About fifteen minutes elapsed between the detention of Stewart and Gerard by the policemen and their identification by the alleged victim.

Eight days later, on June 11, 1990, F.B.I. Special Agent Vernon R. Glossup (Glossup) and Beaumont Police Department Sergeant Billy Davis (Davis) went to the Jefferson County Jail to attempt to interview Gerard. They introduced themselves to Gerard as law enforcement officers. Davis orally advised Gerard of his *Miranda* rights and Gerard agreed to accompany the two officers to Davis' office in the Beaumont Police Department headquarters next door. During the interview that followed, both doors to the office remained open and both officers' weapons remained holstered. No other persons participated in the interview. Before any questioning began, Glossup

provided Gerard with a standardized F.B.I. "FD–395" printed form containing the *Miranda* warnings. Gerard told the officers he could read and write, he studied the F.B.I. form, read a part of it aloud, said he understood the warnings, orally waived his *Miranda* rights, and agreed to be interviewed by the officers. All three men then signed the form.

Next, Gerard spoke freely to the officers about the crime for which he had been indicted, kidnapping, in violation of 18 U.S.C. § 1201(a)(1). After about twenty-five minutes of discussion, during which Gerard was allowed to smoke, have a soft drink and visit the bathroom, Davis prepared on his computer a typed statement memorializing Gerard's version of events. This typewritten statement began with another recitation of the *Miranda* warnings. Gerard read the entire written confession and signed the bottom of each page. The confession was then notarized. Glossup described the events in Davis' office as a "cordial, relaxed interview" during which Gerard was "very cooperative." While Gerard at first told the officers that he had been drinking at the time of the crime and did not recall the details, he gradually regained his memory and had little difficulty relating to the officers the relevant events of June 3, 1990. During the entire time that Gerard was with Glossup and Davis, he did not request a lawyer, invoke his right to remain silent, or request that the interview be terminated.

## II. THE ASSERTED GROUNDS FOR SUPPRESSION

Gerard asserts the following as grounds for suppression of the identification. First, that the victim's identification of him violated his sixth amendment right to counsel, a right Gerard asserts he did not waive. Second, that the introduction into evidence of this identification would be cumulative and "would serve only to bolster a witness whose identification of this defendant has not been impeached by showing contradictory testimony as to the identification of the defendant." Last, Gerard argues that the identification was "impermissibly suggestive" and would likely "lead to irreparable misidentification at trial."

As grounds for suppression of his confession, Gerard argues (1) that he was not warned of his statutory and constitutional rights; (2) that police officers failed to respect his invocation of the right to remain silent; (3) that the confession is the fruit of a poisonous tree, that is, the product of an illegal arrest and an illegal identification; (4) that his confession was involuntarily given because he was intoxicated at the time; and (5) that the written statement prepared by Davis did not accurately reflect the defendant's version of events.

## III. THE LAW

### A. The Identification

■ A person's Sixth and Fourteenth Amendment right to counsel attach only once adversarial proceedings against him have commenced. *Powell v. Alabama,* 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932). Such constitutional protections are not implicated, however, during a "showup" that occurs before the defendant has been formally charged with an offense. *Kirby v. Illinois,* 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972). And while a corporeal line-up is the most reliable identification procedure, and thus the most preferable, it is clear that there is no constitutional right to a line-up. *Branch v. Estelle,* 631 F.2d 1229, 1234 (5th Cir. Unit A 1980). It follows that Gerard's constitutional rights were not *per se* violated when he was identified by his alleged victim.

■ In order to suppress the identification on procedural grounds, Gerard must prove (1) that the manner in which he was identified was impermissibly suggestive and (2) that there is a very substantial likelihood that the suggestiveness led to an irreparable misidentification. *Gibson v. Blackburn,* 744 F.2d 403, 405 (5th Cir.1984) (citing *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968)). Judicial scrutiny of identification procedures is compelled by the defendant's right under the Fifth and Fourteenth Amendments to Due Process. *Stovall v. Denno,*

388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). When exhibiting suspects singly to witnesses, i.e. not in a line-up, courts are to examine the totality of the circumstances surrounding the procedure when assessing its propriety. *Stovall v. Denno*, 388 U.S. at 302, 87 S.Ct. at 1972. Further, there are five elements to the identification procedure upon which a court should focus its inquiry. They are: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation. *Neil v. Biggers*, 409 U.S. 188, 199–200, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972). The bottom line concern, however, is "reliability" which is "the linchpin in determining the admissibility of identification testimony." *Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977).

■ It is very easy in the case *sub judice* to apply the five factors set forth in *Neil v. Biggers* (*supra*). This facility arises because, at the suppression hearing, neither Gerard nor the United States adduced a significant amount of evidence bearing on these factors. Nevertheless, the court will now apply the *Neil v. Biggers* analysis. There is no evidence in the record pertaining to (1) the witness' opportunity to view Gerard at the time of the crime or (2) the witness' degree of attention. (3) The witness' prior description of Gerard is somewhat vague. Officer Colligan testified that the description he received over the radio in his police cruiser was for two black males riding bicycles in the vicinity of Holland and Church Streets. The description is silent regarding the age, weight, build, clothing, hair color, or hair style of the suspects. Although one might expect a reasonable description of a person suspected of committing a crime to include some of these elements, the officers did find the men, on bicycles, at the named intersection, as described by the victim. (4) The witness' level of certainty when identifying Gerard at the showup was apparently high because, as Officer Colligan testified, the victim "positively" identified Gerard. (5) The length of time between the crime and the confrontation was around fifteen minutes. This factor weighs heavily in favor of allowing the evidence of the identification by the victim in that Gerard's physical features were likely fresh in her mind. This is especially so in view of the length of time she had been in the presence of the defendants, and the circumstances of their several-hours sojourn.

In light of the facts surrounding the identification, it is unlikely that the identification procedure employed by Officers Colligan and Porter was impermissibly suggestive.

■ However, even if there was an impermissibly suggestive procedure used by the police it will not compel suppression of the identification if, under the totality of the circumstances, the suggestiveness did not lead to a substantial likelihood of irreparable misidentification. The court finds that the witness' description of Gerard, while not intrinsically detailed, was circumstantially accurate. The chance that the officers found (i) the wrong men, (ii) who were black, (iii) who were riding bicycles, (iv) near the intersection of Holland and Church Streets, (v) within minutes of receiving a radio call describing same is remote. Also the witness was certain of her identification of Gerard at the showup, which occurred only minutes after she last saw Gerard. Accordingly, considering the "totality of the circumstances" and the bottom line factor of overall "reliability," the court is of the opinion that the showup identification of Gerard is sufficiently reliable and that it should not be suppressed. Whether the jury will be persuaded beyond a reasonable doubt that Gerard was one of the alleged victim's assailants is an issue for another day.

As to Gerard's remaining ground to suppress the identification, that the testimony of the victim in this regard would be "cumulative," etc., the court will save the resolution of that articulate assertion for trial, as well.

### B. The Confession

The court now turns to Gerard's asserted grounds for suppression of his confession. First, contrary to Gerard's allegations, the court finds that Gerard was warned three times prior to his confession of his rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966): once orally and twice in writing. The court further finds that the United States has proved by a preponderance of the evidence that Gerard knowingly and intelligently waived his *Miranda* rights. *See Colorado v. Connelly,* 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986).

Second, the court finds that Gerard never invoked his right to remain silent and thus there can be no issue of whether the police officers heeded Gerard's right in this regard.

Third, the court's determination as to the admissibility of the showup identification of Gerard disposes of his argument that his confession is the fruit of a poisonous tree. *See Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

Fourth, Gerard's argument that he was intoxicated at the time of his confession appears to be solely the product of attorney-client miscommunication. Gerard had been in jail for eight uninterrupted days when he confessed. The court is of the belief, and neither of the parties have led it to believe otherwise, that alcoholic beverages are generally not available to prisoners. The record is clear: if Gerard was under the influence of alcohol, to any degree, this occurred at or near the time of the alleged crime, not at the time of his confession. Additionally, Gerard was not subjected to force, threats of force, promises or inducements in order to procure his confession. The court therefore finds that, under the totality of the circumstances, Gerard's confession was voluntarily given. *See Schneckloth v. Bustamonte,* 412 U.S. 218, 226, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854 (1973).

Finally, the court finds that the version of events in the written confession signed by Gerard substantially mirrored his oral confession spoken to Davis and Glossup only moments earlier. Since Gerard read over and signed the written confession prepared by Sergeant Davis, the statement is admissible against him at trial. *See United States v. Johnson,* 529 F.2d 581, 584 (8th Cir.1976).

### IV. CONCLUSION

Although Gerard could have testified at the hearing without abrogating his Fifth Amendment right not to testify in his defense at the trial on the merits, *see Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964); *United States v. Davidson,* 768 F.2d 1266, 1270 (11th Cir. 1985); 18 U.S.C. § 3501(a), he was not required to do so, and the court places no weight on his choice. The court's task was to conduct a hearing in order to reconstruct the relevant facts. Having done so and having received the version of events as testified to by the only witnesses produced, the court is unable to find a sufficient factual basis to grant any facet of Gerard's motions to suppress.

Accordingly, it is hereby ORDERED that the motions of defendant Charles Ray Gerard to suppress (1) his identification in the field by his alleged victim and (2) his confession are each, in all things, DENIED.