UNITED STATES of America, Appellee,

v.

**Kenneth J. SMITH, Appellant.**

**No. 78–1870.**

United States Court of Appeals,
Eighth Circuit.

Submitted May 14, 1979.

Decided Aug. 1, 1979.

---

Thomas M. Bradshaw, Asst. Federal Public Defender, Kansas City, Mo., on brief, for appellant.

Kenneth Josephson, Asst. U. S. Atty., Kansas City, Mo., for appellee; Ronald S. Reed, U. S. Atty., Kansas City, Mo., on brief.

Before BRIGHT, HENLEY, and McMILLIAN, Circuit Judges.

BRIGHT, Circuit Judge.

Kenneth J. Smith appeals from his conviction for armed robbery of a postal station, in violation of 18 U.S.C. § 2114 (1976). Following a jury trial the district court[1] sentenced Smith to a term of imprisonment for twenty-five years.

On appeal, Smith makes the following claims:

1) the district court erred in admitting testimony about the following items into evidence:

(a) identifications of Smith, made from a photospread, as one of the robbers;

(b) the participation of codefendant Ricky Dunn, who was not tried with Smith, in the postal station robbery;

(c) a glove dropped by Smith immediately before the police arrested him; and

(d) inconsistent exculpatory statements made by Smith while in custody;

2) the district court erred in rejecting several instructions requested by Smith and in submitting an aider and abettor instruction to the jury; and

3) the indictment should be dismissed because the mandatory twenty-five year prison sentence under 18 U.S.C. § 2114 is unconstitutional.

Upon careful examination of the record, we believe Smith's claims lack merit, and we affirm his conviction.

I. *Factual Background.*

On September 9, 1978, at approximately 8:25 a.m., two armed men masked with nylon stockings robbed the Sunny Slope Postal Station in Kansas City, Missouri.

During the course of the crime, one robber ordered postal employee Eugene Brown to give him the postal station's money. Brown later related that through the nylon mask he saw that the robber was a black man with discolored lips. Brown also observed that the robber wore a colored shirt and faded jeans. Noticing Brown's distress, Lilbon Clark, the station manager, approached the station's safes and began opening the money drawers. About that time, a second robber entered the station, directed the remaining employees into a back room, and then moved to where Manager Clark was opening the safe's money drawers. Clark gave the second robber a cash box containing $180.

At trial Clark testified that the second robber was a bearded black man with a large Afro, a crooked nose, and yellow, puffed eyes, who wore bib overalls and a faded tee-shirt.

Joel Schrader, one of the employees the second robber directed at gunpoint into the back room, described this robber at trial as bearded, about six feet tall, slender, and wearing blue bib overalls and a faded blue-grayish tee-shirt. As the robbers entered an automobile to make their getaway, Schrader, from the back room window, saw the face of the robber wearing the bib overalls as he removed his nylon mask.

Pursuant to a police broadcast describing the suspects and the getaway car, the police located the getaway car, abandoned about seventeen blocks south of the postal station, shortly after the robbery. Some two blocks away from the abandoned car, police officers observed someone fitting the eyewitnesses' general description of one of the robbers moving through some shrubbery near a house. The suspect, Kenneth Smith, was sweating and appeared somewhat breathless as police officers approached him. Smith threw down a glove and yelled "I did it alone," before the police arrested him.

The police also arrested Ricky Dunn, an alleged participant in the robbery, at Dunn's home adjacent to the yard where police had arrested Smith.

Following the arrest and after informing him of his *Miranda* rights, Postal Inspector Philip Renzulli questioned Smith concerning

1. The Honorable Elmo B. Hunter, United States District Judge for the Western District of Missouri.

the latter's whereabouts on the morning of the robbery. Smith related several conflicting alibis to the inspector: he stated that he attended a party the night before the robbery; that he awoke at his parents' home the morning of the robbery and called a friend to purchase marijuana; that he was returning a borrowed car the morning of the robbery; and that he was returning home after purchasing marijuana from a friend when the police arrested him.

Within hours after the robbery, four postal station employees viewed a police photospread of ten black males.[2] Postal employees Clark and Schrader identified the photo of Kenneth Smith as depicting one of the robbers. At trial, only Clark and Schrader positively identified Smith as a participant in the postal station robbery.

The Government charged Dunn and Smith with conspiracy, armed robbery of a postoffice and interstate transportation of a stolen motor vehicle. Before trial, the district court *sua sponte* ordered a severance and directed that Smith be tried separately. During trial, the Government elected not to proceed on the conspiracy charge. After the jury was unable to reach a verdict on the interstate transportation issue, the court dismissed that charge. The jury found Smith guilty of armed robbery, and the court sentenced him to a term of twenty-five years' imprisonment under 18 U.S.C. § 2114, "using the provisions of [18 U.S.C. § 4205(a)]."

II. *Evidentiary Issues.*

A. *The Photospread Identification.*

Smith contends that the photo array was unduly suggestive because in the ten photos employed in the test he was the only person pictured in blue bib overalls—the garment he wore when arrested.

In *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), the Supreme Court provided the following standard:

[C]onvictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. [*Simmons v. United States, supra,* 390 U.S. at 384, 88 S.Ct. at 971.]

The Court additionally has indicated that even if a photographic·identification procedure were slightly suggestive, that alone would not constitute grounds for reversal of the conviction because "reliability is the linchpin in determining the admissibility of identification [evidence]." *Manson v. Brathwaite,* 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977).

■ Although Smith was the only person wearing bib overalls in the photospread, the fact that all but two of the eyewitnesses viewing the photographs were unable to identify Smith as one of the robbers indicates that the identification procedure was not "so impermissibly suggestive" as to create "a very substantial likelihood of irreparable misidentification." *Simmons v. United States, supra,* 390 U.S. at 384, 88 S.Ct. at 971. Moreover, the record discloses that both Clark and Schrader, the employees who identified Smith from the photospread, (1) closely observed Smith's face either during the course of the robbery (through the partially transparent nylon mask) or during the getaway, (2) provided the police with what turned out to be a reasonably accurate description of Smith immediately after the robbery, (3) furnished uncontradicted testimony of the robber's features, without wavering under lengthy cross-examination by defense counsel, and (4) made the photo identifications within hours of the crime.

Under the totality of circumstances in this case, therefore, the photographic identification procedure did not give rise to a very substantial likelihood of irreparable misidentification, and the Clark and

**2.** The police decided to use a photospread when Smith refused to stand in a lineup without presence of counsel. On the day of the robbery, the police were unable to secure an attorney for Smith.

Schrader identifications were reliable. *See Neil v. Biggers,* 409 U.S. 188, 199–200, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).

#### B. *Evidence of Ricky Dunn's Participation.*

Prior to trial, the district court *sua sponte* ordered that Smith be tried separately from codefendant Ricky Dunn. However, during Smith's trial, Smith objected when the Government attempted to introduce evidence of Dunn's participation in the robbery. Although the district court offered to sustain Smith's objection if defense counsel promised to refrain from "mak[ing] Dunn a non-participant," counsel advised the court of his intention to prove that neither Smith nor Dunn participated in the robbery.

■ Under these circumstances, the district court did not err in admitting into evidence testimony relating to Dunn's participation in the crime. The Government charged Smith both as a principal and as an accomplice in the robbery of the Sunny Slope Postal Station. Evidence of the guilt of a principal, under certain circumstances, is admissible at an accomplice's trial, indeed, "proof of the entire criminal transaction is relevant[.]" *United States v. Chrisco,* 493 F.2d 232 (8th Cir.), *cert. denied,* 419 U.S. 847, 95 S.Ct. 84, 42 L.Ed.2d 77 (1974). In light of defense counsel's efforts to vindicate both Smith and Dunn, evidence relating to the entire criminal transaction, its aftermath, and the identity of both participants constituted relevant and material evidence in the case.

#### C. *The Glove.*

None of the eyewitnesses to the crime recalled whether the robbers wore gloves, and the Government was unable to adduce Smith's fingerprints from the crime scene or from the getaway car. In light of these facts, Smith contends the district court committed prejudicial error by admitting into evidence the glove he discarded during his apprehension. We disagree.

■ The record discloses that the police apprehended Smith soon after the robbery. Smith's possession of a glove only minutes after the robbery permits of an inference that Smith wore gloves during the crime. His wearing of gloves would also explain the absence of incriminating fingerprints in the postal station. The evidence was relevant and, under these circumstances, the danger of unfair prejudice from the glove's introduction into evidence does not substantially outweigh its probative value. Fed.R. Evid. 403. Accordingly, Smith's objection is without merit, and the district court did not abuse its discretion in admitting the glove into evidence. *See United States v. Hall,* 565 F.2d 1052, 1055 (8th Cir. 1977).

#### D. *The Post-Arrest Conflicting Statements.*

Following his arrest, during an interview with a postal inspector, Smith offered several conflicting exculpatory statements. Smith contends that because testimony relating to his inconsistent stories did not serve to controvert prior defense testimony, the district court erred in admitting such testimony into evidence.

■ In *United States v. Mitchell,* 558 F.2d 1332, 1335 (8th Cir. 1977), we noted that "[f]alse exculpatory statements are admissible at trial as tending to indicate guilt[.]" Further, the postal inspector's testimony about Smith's statements bears directly on the credibility of an alibi witness for Smith. Consequently, the district court properly admitted such Government testimony.

#### III. *The Jury Instructions.*

Smith contends the district court erred (a) in rejecting one proffered instruction (No. 15) and in deleting a sentence from another instruction (No. 21), and (b) in submitting to the jury an aider and abettor instruction.

■ Smith's instruction numbered (15) would have informed the jury that it could find a reasonable doubt as to Smith's guilt because of the absence of incriminating fingerprint evidence. Although such a lack of

evidence instruction may be useful, the district court, in its discretion, may decline to employ it. *See United States v. Hephner,* 410 F.2d 930, 934 (7th Cir. 1969). In addition, the court's deletion of a sentence from instruction numbered (21) concerning the burden of proof relating to Smith's identification as a robber does not constitute error, for the instructions as a whole properly conveyed to the jury the appropriate standard of proof.

██ Finally, we have reviewed the aider and abettor instruction and are satisfied that the trial judge fairly presented the cause to the jury with appropriate instructions.

### IV. *The Mandatory Sentence of 18 U.S.C. § 2114.*

The district court imposed upon Smith a twenty-five year prison term pursuant to section 2114,[3] with the provision that Smith be eligible for parole after serving one-third of his sentence. 18 U.S.C. § 4205(a). Smith alleges that the sentence is unconstitutional because section 2114 prevents the consideration of "numerous factors which ordinarily contribute to the sentencing decision [and thereby] result[s] [in] a sentence disproportionate to those for offenses of comparable severity[.]"

██ We find no merit in Smith's constitutional argument. Smith robbed the postal station by force with a handgun. Such conduct is sufficient to invoke the twenty-five year sentence of section 2114, particularly in light of Smith's prior offenses.[4] *United States v. Wilson,* 506 F.2d 521, 522 (9th Cir. 1974). Moreover, the requirements of section 2114 do not impose truly mandatory obligations of sentencing upon a court, for a sentencing judge may suspend the sentence or, pursuant to 18 U.S.C. § 4205(b), provide for immediate eligibility for parole consideration.[5]

Accordingly, we affirm the conviction.

---

**3.** 18 U.S.C. § 2114 states:

Whoever assaults any person having lawful charge, control, or custody of any mail matter or of any money or other property of the United States, with intent to rob, steal, or purloin such mail matter, money, or other property of the United States, or robs any such person of mail matter, or of any money, or other property of the United States, shall, for the first offense, be imprisoned not more than ten years; and if in effecting or attempting to effect such robbery he wounds the person having custody of such mail, money, or other property of the United States, or puts his life in jeopardy by the use of a dangerous weapon, or for a subsequent offense, shall be imprisoned twenty-five years.

**4.** The 25-year sentence imposed upon Smith does not represent the number of years he will · serve. Pursuant to 18 U.S.C. § 4205(a), Smith becomes eligible for parole after serving one-third of his sentence. At that time, the Parole Commission, upon consideration of numerous factors pertinent to parole, will determine whether Smith should be released from prison.

**5.** 18 U.S.C. § 4205(b) reads, in pertinent part:

(b) Upon entering a judgment of conviction, the court having jurisdiction to impose sentence, when in its opinion the ends of justice and best interest of the public require that the defendant be sentenced to imprisonment for a term exceeding one year, may (1) designate in the sentence of imprisonment imposed a minimum term at the expiration of which the prisoner shall become eligible for parole, which term may be less than but shall not be more than one-third of the maximum sentence imposed by the court, or (2) the court may fix the maximum sentence of imprisonment to be served in which event the court may specify that the prisoner may be released on parole at such time as the Commission may determine.