**UNITED STATES of America, Appellee,**

v.

**Donald V. ANDERSON, Appellant.**

**No. 79–1788.**

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 17, 1980.

Decided April 3, 1980.

488

A. Thomas Pokela, Sioux Falls, S. D., for appellant.

Bonnie Ulrich, Asst. U. S. Atty., Sioux Falls, S. D., argued, Terry L. Pechota, U. S. Atty., Sioux Falls, S. D., on brief, for appellee.

Before ROSS, Circuit Judge, GIBSON, Senior Circuit Judge, and HENLEY, Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge.

Donald Anderson was convicted pursuant to a jury trial in the United States District Court for the District of South Dakota[1] on all counts of a forty-four-count indictment. The indictment charged Anderson with mail fraud, forgery, and uttering in violation of 18 U.S.C. §§ 495, 1341–42 (1976) by engaging in a scheme to defraud the Government through filing thirty false income tax returns in different names in order to obtain tax refunds. On appeal, Anderson contends

1. The Honorable Bruce M. Van Sickle, United States District Judge, District of North Dakota, sitting by designation in South Dakota.

that the Government failed to prove a fact alleged in seven counts of the indictment, and that the facts alleged do not constitute mail fraud as a matter of law with regard to two of the counts. Anderson also challenges two evidentiary rulings made by the trial court. We affirm.

Anderson filed thirty completed Form 1040 federal income tax returns for the year 1977, under thirty different, fictitious husband and wife names. All the returns contained addresses located either in South Dakota, Iowa, or Nebraska. Each completed return, accompanied by a W-2 wage earner form, showed a refund due; the amounts of the refunds varied from $1800 to $3500. At trial, expert testimony linked Anderson's handwriting to that on the returns.

During July 1978, Anderson mailed or caused to be mailed from Beresford, South Dakota, twenty-eight change-of-address cards for the same fictitious male names that were on twenty-eight of the thirty returns. All of the "old addresses" on the cards were false. Either no such address existed or no person by the name listed had lived at the stated address. Each of the cards listed the same new address, an apartment in Sioux City, Iowa, which had only recently been rented.

In the meantime, the Internal Revenue Service had become alerted to the scheme by a computer check system involving non-matching social security numbers. The IRS then issued two checks in the name of Richard and Mary Orr, and Calvin and Shirley Allen. Two agents of the IRS personally delivered the checks, in franked envelopes, to the postmasters at Elk Point and Jefferson, South Dakota. No change of address cards had been filed for either Orr or Allen.

Anderson picked up both checks. On July 3, 1978, Anderson opened checking accounts in Lennox and Hartford, South Dakota, where he deposited the refund checks, receiving a substantial portion of the checks in cash.

Anderson was indicted in August 1978, with a superseding indictment filed in January 1979. Jury trial was held on July 23 through July 27, 1979. The jury found Anderson guilty on all forty-four counts. Anderson was sentenced to three years' imprisonment on Counts 42 and 44[2] to be served concurrently. The imposition of sentence on the remaining counts was deferred and Anderson was placed on two years' probation for each count, to be served concurrently and to commence upon his release from prison.

*Sufficiency of the indictment*

Anderson alleges the trial court erred in failing to grant acquittal on Counts 1 through 10 of the indictment. Counts 1 and 2 charged Anderson with mail fraud, in violation of 18 U.S.C. § 1341, by devising the tax refund scheme which resulted in his receiving, from two United States Post Offices, one envelope from each containing checks addressed to Richard and Mary Orr and to Calvin and Shirley Allen, respectively. Anderson alleges that 18 U.S.C. § 1341 presupposes a mailing of some sort with the expectation that the mailing would come through normal postal channels. Anderson argues that since the franked envelopes were carried to the post offices by IRS agents, there was no mailing for purposes of the statute. We disagree.

Section 1341 provides in part:

Whoever, having devised or intending to devise any scheme or artifice to defraud * * * for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, *or takes or receives therefrom*, any such matter or thing, or knowingly causes to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter

2. Counts 42 and 44 charged Anderson with forgery, in violation of 18 U.S.C. § 495 (1976), by falsely endorsing the two Government checks which he deposited in the checking accounts in South Dakota.

or thing, shall be fined not more than $1,000 or imprisoned not more than five years, or both. [Emphasis added.]

Anderson received the two checks from postal employees. After the checks reached the post offices they were handled through normal postal channels. In order to be classified as mail, a letter does not have to enter the postal process in one of the customary ways. *See United States v. Kent*, 449 F.2d 751, 752 n.2 (5th Cir. 1971), *cert. denied*, 405 U.S. 994, 92 S.Ct. 1268, 31 L.Ed.2d 462 (1972); *accord United States v. Hergenrader*, 529 F.2d 83, 85 & n.3 (8th Cir.), *cert. denied*, 426 U.S. 923, 96 S.Ct. 2632, 49 L.Ed.2d 377 (1976). *See also United States v. Mangan*, 575 F.2d 32, 48–49 (2d Cir.), *cert. denied*, 439 U.S. 931, 99 S.Ct. 320, 58 L.Ed.2d 324 (1978). The indictment in Counts 1 and 2 met the statutory requirements of section 1341.

Anderson also contends that proof at trial of Counts 3 through 10 was at fatal variance with that portion of those counts which charged that Anderson "placed in an authorized depository for mail matter" eight change-of-address forms. Anderson does not challenge Counts 11 through 21, which charged that Anderson "knowingly caused to be delivered by mail" ten change-of-address forms. While Anderson admits that the Government need not prove that he personally placed any thing in the mail in order to obtain a conviction under section 1341, *see Pereira v. United States*, 347 U.S. 1, 7–9, 74 S.Ct. 358, 362–363, 98 L.Ed. 435 (1954);[3] *United States v. Brickey*, 426 F.2d 680, 684 (8th Cir.), *cert. denied*, 400 U.S.

828, 91 S.Ct. 55, 27 L.Ed.2d 57 (1970), he does maintain that Government must meet the burden of proof that the indictment set for it.

In order to prevail in a claim of fatal variance between the proof offered at trial and the wording of the indictment, Anderson must establish not only variance, but also that the variance affected his substantial rights. *United States v. Schrenzel*, 462 F.2d 765, 769 (8th Cir.), *cert. denied*, 409 U.S. 984, 93 S.Ct. 325, 34 L.Ed.2d 248 (1972). The variance must go to the heart of the indictment with the proof offered at trial failing to establish one of the crucial elements necessary for prosecution under sections of the United States Code charged in the indictment. *United States v. Jackson*, 576 F.2d 749, 756 (8th Cir.), *cert. denied*, 439 U.S. 828, 858, 99 S.Ct. 102, 175, 58 L.Ed.2d 122, 167 (1978). Here, the evidence introduced at trial showed that Anderson prepared the change-of-address cards and that the cards were processed through the mail. Substantial evidence was presented to the jury from which it could conclude that Anderson, at a minimum, "knowingly caused to be delivered by the mail" the cards in violation of section 1341. In fact, as stated above, Anderson does not appeal those counts of the indictment which contained the former language. The variance between the words in the indictment and the proof offered at trial did not prejudice or affect the substantial rights of Anderson.[4]

### Evidentiary rulings

Anderson contends that a written report by a Government handwriting expert, Jack

---

**3.** "Where one does an act with knowledge that the use of the mails will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended, then he 'causes' the mails to be used." *Pereira v. United States*, 347 U.S. 1, 8–9, 74 S.Ct. 358, 363, 98 L.Ed. 435 (1954).

**4.** Anderson also included in his issues on appeal the question of whether the trial court erred in denying his motion for acquittal on Counts 41 and 43, which dealt with forgery under 18 U.S.C. § 495 (1976), since the refund checks were sent out as bait and were not intended as genuine obligations of the United States. Anderson did not brief this issue. At

trial, in moving for the judgment of acquittal on all counts, Anderson did so on the basis that the Government failed to establish a case beyond a reasonable doubt that he committed the acts alleged within the various counts of the indictment. No specific motion based on the allegation that the refund checks were bait and not genuine obligations was made at trial. Reading Anderson's latter trial motion broadly, we find that the fact that the Government may have failed to prove that the refund checks were genuine, as alleged in the indictment, would not create a fatal variance. *See United States v. Cassell,* 452 F.2d 533, 536 (7th Cir. 1971).

Calvert, should have been admitted into evidence by the trial court. Calvert had examined the documents to be submitted by the Government at trial. He had written four letter reports concerning his examinations. Prior to trial, Calvert became severely ill and was unable to testify. The Government then utilized another document examiner, Claud Eaton, to review the evidence and to testify at trial. Eaton read Calvert's reports but testified that he did not utilize the information in the reports. The trial court held Calvert's reports to be hearsay, but did allow Anderson's attorney to cross-examine Eaton concerning the contents of the reports.

 Anderson contends that the reports should have been admissible as admissions by an agent of a party. *See* Fed.R. Evid. 801(d)(2)(D). At trial, however, Anderson did not make this specific offer of proof. The trial court found the reports to be sufficiently ambiguous to require testimony from Calvert as to their meaning in order for the interests of justice to be served. Since Calvert was unavailable, the reports were excluded. *See* Fed.R.Evid. 804(b)(5)(C); *United States v. Love*, 592 F.2d 1022, 1027 (8th Cir. 1979). While the question of admissibility is a close one, the trial court's determination that the interests of justice would be better served by excluding the reports should be given deference. In addition, the presentation of additional evidentiary theories after the jury has returned its verdict does not comport with the timeliness requirement of Fed.R. Crim.P. 51. *United States v. Lara-Hernandez*, 588 F.2d 272, 274 (9th Cir. 1978). *See generally* 1 WEINSTEIN's EVIDENCE ¶ 103[03], at 103–27 & n.3 (1979). We find no error in the trial court's ruling excluding the reports.

Finally, Anderson contends that the trial court erred in failing to suppress the identifications made of him by the postmasters and bank employees, in photo lineups presented to them by IRS agents. Anderson claims the procedure used was inherent-

ly prejudicial. In addition, Anderson complains that the procedure tainted the subsequent in-court identification of him by the witnesses shown the photo. The procedure involved five witnesses being shown a single photo display of Anderson prior to his arrest or indictment, within ten days of their actual observation of him.[5] All the witnesses had ample opportunity to view Anderson at close range and in good light for several minutes. In addition, the witnesses conversed with Anderson. Finally, four of the witnesses observed and spoke with Anderson after viewing the photo display. All of the witnesses were able to positively identify Anderson in court based upon the independent source of their personal observations which occurred both before and after the photo identification.

 In considering whether due process is violated by use of photo identification procedures, the Supreme Court, in *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968), held that:

each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.

The likelihood that misidentification may result from an unnecessarily suggestive identification procedure, and not the suggestive procedure itself, forms the basis for a violation of the defendant's right to due process. *Neil v. Biggers*, 409 U.S. 188, 198–99, 93 S.Ct. 375, 381–82, 34 L.Ed.2d 401 (1972). The central question is whether under the "totality of the circumstances" the identification was reliable even though the procedure was suggestive. The factors to be considered in evaluating the likelihood of misidentification include "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior

---

**5.** One other witness was shown a six-person photo display. The trial judge suppressed her identification testimony due to the weakness of the testimony and the risk of prejudice.

**492**

description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and confrontation." *Id.* at 199–200, 93 S.Ct. at 382; *see Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977); *Stovall v. Denno*, 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967); *United States v. Smith*, 602 F.2d 834, 837 (8th Cir. 1979).

█ In applying the analysis to the facts in this case, we find that the identification evidence was reliable. All of the witnesses had had an opportunity to view Anderson for several minutes. Three of the witnesses were on the lookout for someone asking for mail for a person with the name given by Anderson. The other two witnesses observed and spoke with Anderson for ten to fifteen minutes. All of the witnesses were shown the photograph within ten days after observing Anderson. All positively identified Anderson at trial. Furthermore, Anderson was identified by five different persons, at various locations.

While identification arising from single-photograph displays may in general be viewed with suspicion, we cannot say that under the circumstances of this case there is a "very substantial likelihood of irreparable misidentification." *Manson v. Brathwaite*, 432 U.S. at 116, 97 S.Ct. at 2254; *Simmons v. United States*, 390 U.S. at 384, 88 S.Ct. at 971; *United States v. Mears*, 614 F.2d 1175 at 1177 (8th Cir.1980). In retrospect, it would have been better if a photographic array which included a reasonable number of persons similar in appearance to Anderson had been utilized by the Government. However, the defect, if there be one, is not one of constitutional dimension, but rather one which goes to the weight and not the substance of the evidence presented. *Manson, supra*, 432 U.S. at 117, 98 S.Ct. at 2254. There was no substantial likelihood of misidentification of Anderson in this case. The objection here is wholly technical. The totality of the circumstances point directly to Anderson as the perpetrator of the crimes in question.

Affirmed.