UNITED STATES of America, Appellee,

v.

**Thomas C. ALLEY, Appellant.**

**No. 81–1447.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 14, 1981.

Decided Oct. 20, 1981.

issue in view of our holding.

Linda F. Dycus, Kansas City, Mo., for appellant.

J. Whitfield Moody, U. S. Atty., Carol Ann Petren, Asst. U. S. Atty., argued, Kansas City, Mo., for appellee.

Before BRIGHT, HENLEY and ARNOLD, Circuit Judges.

BRIGHT, Circuit Judge.

Defendant Thomas C. Alley appeals from his conviction in a joint trial with two others of conspiracy to sell stolen goods and theft of an interstate shipment, in violation of 18 U.S.C. §§ 371 and 658 respectively. He asserts that the district court [1] erred (1) in denying his motion for severance, (2) in denying his motion for a mistrial, (3) in denying his motion for a new trial because of insufficient evidence, and (4) in overruling his motion for a new trial based on newly discovered evidence. For the reasons set forth below, we affirm the decision of the district court.

I. *Background.*

One of Alley's codefendants, Robert G. Beverlin, approached Kenneth L. Gordon, an FBI informant, concerning the purchase of stolen beef. On March 23, 1980, after preliminary negotiations, an undercover FBI agent met with Beverlin, Alley, and two other codefendants, Gerald L. Singer and Raymond E. Wagoner. Law enforcement personnel made tape recordings and videotapes of the meeting and the prosecution presented this evidence to the jury.

The parties initially agreed to deliver the beef to Olathe, Kansas, but they later changed the place of delivery to a motel in Kansas City, Missouri. The plan centered around Alley's arrangement with his employer. Alley would drive the truckload of beef to Boston, Massachusetts, the following morning. The parties agreed instead that Alley would leave the truck at the truck stop where an undercover agent, pretending to be a participant, would pick it up. Alley would leave some of his personal effects in the truck to make it appear that he intended to drive it to Boston. He would, however, stay away from the truck stop, thereby establishing an alibi for himself. The following day he would report the tractor-trailer stolen.

On the evening of the proposed hijacking, the undercover agents met Singer and Beverlin. As planned, Alley was not present.

Because neither the police department nor the FBI had obtained the $20,000 necessary to purchase the beef, the agents aborted the plan and arrested defendants Wagoner and Beverlin at the scene. Singer escaped but was later arrested.

Beverlin pleaded guilty. Singer, Wagoner, and Alley stood trial jointly. At their trial, Singer and Wagoner attempted to establish a defense of lack of intent, contending that they acted as informants for the FBI. Alley did not testify, but attempted to establish that he lacked the ability to form a specific intent to commit the crimes due to his intoxication during the meeting at which they planned the theft. The undercover agent and Gordon both testified that Alley appeared sober at the meeting. The videotape provided some corroboration of this testimony.

II. *Discussion.*

A. *Severance.*

■ Alley contends that Wagoner's and Singer's defense asserting that they had acted as FBI informants conflicted with Alley's defense that he lacked the mental ability to commit any crime. Therefore, he argues, the trial court erred in refusing to grant him a severance. Alley has offered no evidence whatsoever that the denial of his motion for severance resulted in prejudice. *See United States v. Boyd,* 610 F.2d 521, 526 (8th Cir. 1979), *cert. denied,* 444 U.S. 1089, 100 S.Ct. 1052, 62 L.Ed.2d 777 (1980); *United States v. Jackson,* 549 F.2d 517, 523 (8th Cir.), *cert. denied,* 430 U.S. 985, 97 S.Ct. 1682, 52 L.Ed.2d 379 (1977). He therefore failed to meet the heavy burden of showing that the trial court abused its discretion. *See Williams v. United States,* 416 F.2d 1064, 1070 (8th Cir. 1969).

B. *Improper Statements.*

■ Alley next contends that the district court should have granted his motion for a new trial after the Government attorney referred to the defendants as "crooks."

1. The Honorable Elmo B. Hunter, United States District Judge for the Western District of Missouri.

That reference, while clearly improper, does not establish undue prejudice under the record in this case. *See United States v. King,* 616 F.2d 1034, 1040 (8th Cir.), *cert. denied,* 446 U.S. 969, 100 S.Ct. 2950, 64 L.Ed.2d 829 (1980). The district court has broad discretion to determine whether an improper statement has so tainted the proceeding as to require a mistrial. *United States v. Maestas,* 554 F.2d 834, 839 (8th Cir.), *cert. denied,* 431 U.S. 972, 97 S.Ct. 2936, 53 L.Ed.2d 1070 (1977). At the time of this incident, the court ordered the question stricken and admonished the jury to disregard the reference. *See Keeble v. United States,* 347 F.2d 951, 956 (8th Cir.) (court admonition to disregard comments sufficient), *cert. denied,* 382 U.S. 940, 86 S.Ct. 394, 15 L.Ed.2d 350 (1965). Moreover, the videotape, audio recordings, and other evidence sufficiently implicated Alley that the Government's reference does not constitute reversible error. *See, e. g., United States v. Thiel,* 619 F.2d 778, 781–82 (8th Cir.) (comparison of defendant's actions to Holocaust and Guyana incidents not prejudicial when viewed in context of overwhelming guilt), *cert. denied,* 449 U.S. 856, 101 S.Ct. 152, 66 L.Ed.2d 70 (1980); *United States v. Ostertag,* 619 F.2d 767, 771 (8th Cir. 1980) (reference to defendant as vicious, cunning, and skillful not prejudicial in light of court instruction to disregard and overwhelming evidence of guilt); *United States v. King, supra,* 616 F.2d at 1040–41 (disparaging comments throughout trial not prejudicial in context of overwhelming evidence of guilt).

### C. Prejudicial Publicity.

Alley argues that the court should have declared a mistrial after a newspaper article appeared containing a reference to codefendant Beverlin's guilty plea.

■ Publicized information is objectionable if it creates a danger of substantial prejudice to the rights of the accused. *See United States v. Hood,* 593 F.2d 293, 296 (8th Cir. 1979). The trial judge possesses broad discretion in evaluating the prejudice resulting from juror exposure to trial publicity. *Marshall v. United States,* 360 U.S. 310, 312, 79 S.Ct. 1171, 1172, 3 L.Ed.2d 1250 (1959) (*per curiam*); *United States v. Burchinal,* 657 F.2d 985, 997 (8th Cir. 1981); *United States v. Richardson,* 651 F.2d 1251, 1252 (8th Cir. 1981). The trial judge should poll the jury only when the publicity creates a danger of substantial prejudice. *Compare United States v. Richardson, supra,* 651 F.2d at 1252–53 (sufficient threat of prejudice) *with United States v. Hood, supra,* 593 F.2d at 297 (no danger of substantial prejudice). Only when the prejudice cannot be cured any other way should the court declare a mistrial. *See id.* at 296.

■ The mere mention of Beverlin's guilty plea did not necessarily prejudice Alley or tend to establish his guilt, because the guilty plea did not conflict with Alley's defense. Alley admitted his presence at the meeting. He maintained ignorance of Beverlin's activities, however, and lack of specific intent to commit the crimes due to intoxication. Beverlin's guilty plea did not serve to erode Alley's defense so juror knowledge of Beverlin's plea will not be deemed clearly prejudicial. The trial judge gave a cautionary instruction. The circumstances did not call for a mistrial. *See United States v. Hood, supra,* 593 F.2d at 297.

### D. Sufficiency of the Evidence.

■ We reject Alley's contentions that the trial court should have granted a new trial because of insufficient evidence. The evidence adduced at trial indicates that Alley may not have been intoxicated during the acts in question. FBI Agent Reece testified that Alley answered questions and rolled a cigarette during the crucial March 23 meeting. In addition, as noted above, a videotape of this meeting was played to the jury. In ruling on a motion for judgment of acquittal, the court must view the evidence in the light most favorable to the Government, *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942), and credit the Government with all favorable inferences reasonably drawn from that evidence. *United States v. Cline,*

570 F.2d 731, 733 (8th Cir. 1978); *see United States v. Archie,* 656 F.2d 1253, 1257 (8th Cir. 1981). The evidence in this case amply supports the jury's verdict.

### E. *Competency.*

Finally, Alley argues that he was incompetent to stand trial and that newly discovered evidence warrants a new trial. After trial, Alley moved for a new trial based on new evidence, followed by a motion for a determination of mental competency pursuant to 18 U.S.C. § 4244 (1976). Defense counsel filed these motions after becoming aware of defendant's previous treatment for Binswanger's disease, a brain condition that causes blackouts and memory lapses. The trial court held an evidentiary hearing after which it concluded that Alley had been competent to stand trial.

A defendant's competency to stand trial depends upon his rational, as well as factual, understanding of the proceedings against him and his sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding. *Dusky v. United States,* 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960) (*per curiam*); *United States v. Voice,* 627 F.2d 138, 141 (8th Cir. 1980); *Wheeler v. United States,* 404 F.2d 252, 254 (8th Cir. 1968). Alley does not contend that his brain disorder rendered him incapable of understanding the criminal charges pending against him. Nor does he contend that this disease made it impossible for him to understand or consult with his lawyer. Instead, Alley maintains that he cannot remember all the events underlying the charges against him and, therefore, he could not furnish counsel with all the facts from his perspective.

Partial memory loss does not substantially impair a defendant's ability to consult with counsel and to understand the proceedings against him. *Wheeler v. United States, supra,* 404 F.2d at 254. The record shows ample evidence, notwithstanding the purported blackouts, on which the trial judge could conclude that Alley was competent to stand trial. Appellant has not offered, nor can we find, evidence that the trial court's decision should be deemed "clearly arbitrary." *United States v. Voice, supra,* 627 F.2d at 141; *United States v. Maret,* 433 F.2d 1064, 1067 (8th Cir. 1970), *cert. denied,* 402 U.S. 989, 91 S.Ct. 1678, 29 L.Ed.2d 155 (1971).

Finally, Alley is not entitled to a new trial based on newly discovered evidence. At trial, Alley offered a defense of lack of specific intent due to intoxication. The record, however, contains no evidence that Binswanger's disease affected his ability to form the requisite intent. Consequently, we have no basis for saying that introduction of this evidence would likely produce an acquittal. *See United States v. Conzemius,* 611 F.2d 695, 696 (8th Cir. 1979); *United States v. Frye,* 548 F.2d 765, 769 (8th Cir. 1977). The trial court did not abuse its discretion in denying the motion for a new trial. *See United States v. Easter,* 552 F.2d 230, 235 (8th Cir.), *cert. denied,* 434 U.S. 844, 98 S.Ct. 145, 54 L.Ed.2d 109 (1977).

Affirmed.